UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MISTER E-LIQUID LLC,

    Plaintiff,

                                       CASE NO. 1:19-CV-786

v.

                                       HON. ROBERT J. JONKER

GOVERNER GRETCHEN WHITMER,
*et al.*,

    Defendants.
_____/

## **ORDER**

### INTRODUCTION

Vaping is popular.  It is also at the center of public concern about serious illness, and even death, that has been linked to vaping.  The linkage is, as yet, poorly understood and disputed.  But the reality of people becoming seriously ill, and in some cases dying, after using certain vaping products, underscores the serious risks at stake while medical professionals unravel the mysteries.

The Governor of Michigan announced her intention on September 4, 2019, to take emergency action to address the risks. On September 18, Michigan's Director of Health and Human Services promulgated Emergency Rules under the Michigan Public Health Code.  The Emergency Rules impose a temporary ban on flavored vaping products in Michigan, and specify temporary marketing restrictions on other vaping products.

On Friday, September 27, plaintiff filed this lawsuit challenging the Emergency Rules under the Dormant Commerce Clause and on a preemption theory under the federal Family Smoking Prevention and Tobacco Control Act.  Plaintiff manufactures and sells flavored vaping

products both inside and outside of Michigan. Plaintiff seeks a temporary restraining order blocking the Emergency Rules. Without the TRO, Plaintiff says it will lose inventory and revenue, and effectively be forced out of the vaping business in Michigan.

### NO BASIS FOR EX PARTE RELIEF

Plaintiff filed this action just before 5:00 p.m. on Friday, September 27. It claims to need relief by noon on Monday, September 30, and it says the urgency is so great that the Court should not wait to give the Governor, the Director and their legal team notice and an opportunity to be heard.

The timing of plaintiff's filing late on a Friday with a demand for relief by noon on Monday would have created a nearly impossible timeframe for meaningful input under the best of circumstances. And this weekend certainly was not the best of circumstances. Michigan's Executive Branch is necessarily pre-occupied at the moment with the nitty-gritty practical realities of evaluating 16 appropriation bills to determine whether Michigan will experience a total or partial shutdown effective October 1.

In short, despite some perfunctory efforts plaintiff reports making to give the State notice of this matter, plaintiff is really asking the Court to enter a TRO on an ex parte basis against Emergency Rules promulgated under the State's Public Health Code. Under Rule 65(b)(1), such extraordinary relief requires a convincing showing based on specific facts provided under oath or declaration that irreparable injury will occur before the State can be heard. In the Court's view, plaintiff has not established a convincing basis for this extraordinary ex parte relief.

To the contrary, virtually all the harm to which plaintiff points is economic—loss of inventory and revenue.[1] Even when economic loss is potentially significant, it is not normally the kind of irreparable harm that supports emergent relief, let alone an ex parte TRO. "[A] preliminary injunction usually will be denied if it appears that the applicant has an adequate alternate remedy in the form of money damages…." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2948.1 (2013). Moreover, even plaintiff's recitals suggest that the most serious economic consequences—such as loss of jobs and re-location of business operations—are not going to happen before the State has a reasonable opportunity to be heard, let alone before Monday noon.

Accordingly, to the extent the plaintiff seeks an ex parte TRO, the motion is **DENIED**. The Court will separately consider whether a preliminary injunction should issue, but not before defendants are served with the complaint and motion papers, and have had 14 days from the date of service within which to file their response to the plaintiff's motion.

### OTHER QUESTIONS

What the Court has already said is enough to explain why no ex parte TRO is proper. In looking ahead to the possibility of a preliminary injunction, and the concomitant need to assess the probabilities of success on the merits, the Court has substantive questions from its initial review. The parties may choose to address these issues in written briefing:

1. Plaintiff's preemption theory rests on the assumption that flavored vaping products are covered under the Tobacco Control Act based on the so-called "deeming" power of the FDA to

---

[1] Plaintiff also suggests some vaping customers may be hurt more by the ban because they will choose to revert to conventional cigarettes. Whether that will happen, and if so, what the health consequences would be, are too speculative on the present record to displace the Emergency Rules on an ex parte basis.

3

declare what products are covered under the Act.  21 U.S.C. § 387a(b); 81 Fed. Reg. 28, 973 (May 10, 2016).  The statutory text of the Act does not expressly cover vaping products.  After the unanimous en banc decision of the Sixth Circuit in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019), the ability of an agency to expand the scope of statutory coverage in this way may at least be an open question.  If the Act does not apply, because the deeming rule fails under *Havis*, then would there be any basis for federal preemption here?

        2.  But even assuming the Tobacco Control Act does apply, whether under the "deeming" provision or otherwise, the Act expressly preserves the power of a State to adopt regulations "more stringent than" the federal rules, up to and including a rule "prohibiting the sale, distribution, possession, exposure to, access to, advertising and promotion of, or use of" covered products.  21 U.S.C. § 387p(a)(1).  And on the face of things, that appears to be what the most far-reaching provisions of the Emergency Rules do.[2]  How can they be preempted if Congress expressly preserved the State's ability to make more stringent regulatory decisions, including a ban, on the products?

        3.  The Dormant Commerce Clause protects the power of Congress to ensure the free flow of interstate commerce even in situations when it chooses not to act—that is, in those situations where Congress chooses to let its commerce power remain dormant.  But if plaintiff is correct that Congress addressed these products in the Tobacco Control Act, then Congress has exercised its power, and how would the Dormant Commerce Clause apply at all?

        4.  Assuming the Dormant Commerce Clause theory is in play, either because the Tobacco Control Act does not apply, or because even if it does, the theory still has bite to whatever form of

---

[2] Some of Emergency Rule 3 could on its face tread on labeling and similar preemption carve outs under 21 U.S.C. § 387p(a)(2).  But the State appears to have anticipated that and made it clear the Emergency Rule does not trump the FDA on any such issue.

more stringent regulation a State may choose to apply, is there anything in the Emergency Rules that favors Michigan interests over out-of-State interests? If anything, plaintiff's theory of irreparable harm suggests the burdens fall more heavily on in-State interests. Under these circumstances, why doesn't the balancing test summarized in *Pike v. Bruce Church, Inc.*[3] apply, rather than the more stringent *per se* test applicable to discriminatory State regulations?

## CONCLUSION

Accordingly, plaintiff's motion (ECF No. 3) is **DENIED** to the extent it seeks an ex parte TRO. Defendants will have 14 days from the date on which it is served with the complaint and motion papers to file a response the motion for a preliminary injunction.

**IT IS SO ORDERED.**

Dated:   September 30, 2019            /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       CHIEF UNITED STATES DISTRICT JUDGE

---

[3] 397 U.S. 137, 142 (1970) ("Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.").